# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## EASTERN DIVISION

| | | |
|---|---|---|
| DORITA HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case number 4:11cv0874 SNLJ |
| | ) | TCM |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This is an action under 42 U.S.C. § 405(g) for judicial review of the final decision of Michael J. Astrue, the Commissioner of Social Security (Commissioner), denying the application of Dorita Hill (Plaintiff) for disability insurance benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. § 401-433. Plaintiff has filed a brief in support of her complaint; the Commissioner has filed a brief in support of his answer. The case was referred to the undersigned United States Magistrate Judge for a review and recommended disposition pursuant to 28 U.S.C. § 636(b).

## Procedural History

Plaintiff applied for DIB in November 2008, alleging a disability as of May 1, 2007,[1] caused by ruptured discs in her back. (R.[2] at 116-23.) This application was denied initially

---

[1] Prior to the hearing, the alleged onset date was amended to January 28, 2009.

[2] References to "R." are to the administrative record filed by the Commissioner with his answer.

and after a hearing held in February 2010 before Administrative Law Judge (ALJ) Randolph E. Schum.  (Id. at 7-16, 20-41.)  The Appeals Council denied Plaintiff's request for review, effectively adopting the ALJ's decision as the final decision of the Commissioner.  (Id. at 1-3.)

## Testimony Before the ALJ

Plaintiff, represented by counsel, and Delores Gonzales, C.R.C.,[3] a vocational expert (VE), testified at the administrative hearing.

Plaintiff testified that she was then fifty-five years old, had completed the tenth grade, and had received a General Equivalency Degree (GED).  (Id. at 22-23.)  She has had no further formal education.  (Id. at 23.)  She lives with her daughter and grandson in a one-story house.  (Id. at 30.)

Plaintiff has primarily worked as a housekeeper.  (Id. at 23.)  In one job, she had to lift between twenty-five and fifty pounds; in the other, she lifted less than ten pounds.  (Id.) The job with the lighter requirement lasted only from October 2008 to January 2009.  (Id.) The job with the heavier requirement had lasted for ten years.  (Id. at 24.)  At this job, she worked in the laundry room doing washing, drying, and folding.  (Id.)  She had also worked a s dietary aide at a nursing home and as a teacher's aide.  (Id.)  The former job was for two years; the latter job was also for two years, 2002 and 2003.  (Id.)  From August 2005 to May 2007, Plaintiff worked in a cafeteria.  (Id.)

---

[3]Certified Rehabilitation Counselor.

When working in the laundry room, she sustained a work-related injury to her back. She settled the resulting claim approximately five years earlier.  (<u>Id.</u> at 25.)  She also filed for unemployment in 2007 or 2008, representing that she was willing and able to work.  (<u>Id.</u> at 25, 26.)

Asked what problems Plaintiff was having with her back, Plaintiff explained that she has pain shooting down her hips and legs.  (<u>Id.</u> at 27.)  Also, her ankles hurt.  (<u>Id.</u>)  Her high blood pressure is controlled by medication.  (<u>Id.</u> at 28.)  She smokes a pack of cigarettes every day and a half.  (<u>Id.</u>)

The farthest Plaintiff can walk is half a block until her legs start hurting and she has to stop and rest.  (<u>Id.</u>)  The longest she can stand without leaning on something is ten to fifteen minutes.  (<u>Id.</u>)  Her legs then start hurting.  (<u>Id.</u>)  She can sit for thirty to forty-five minutes.  (<u>Id.</u> at 28-29.)  Plaintiff uses a cane, and has done so for approximately one year. (<u>Id.</u> at 29.)  She has difficulty bending and stooping.  (<u>Id.</u>)  The heaviest weight she can lift is ten pounds.  (<u>Id.</u>)  Anything heavier, her back and legs start hurting.  (<u>Id.</u>)

Plaintiff is usually able to dress and bathe herself without assistance.  (<u>Id.</u>) Occasionally, her daughter helps her in and out of the tub and with the "top part" of her clothing.  (<u>Id.</u> at 29-30.)  She does not go out with family or friends.  (<u>Id.</u> at 30.)  Once a month, she attends church.  (<u>Id.</u>)  Her household chores consist of washing a few dishes. (<u>Id.</u> at 31.)  She does not cook, do the laundry, clean, or shop for groceries.  (<u>Id.</u> at 31-32.) She cannot be in a crowd.  (<u>Id.</u> at 32.)  Asked how she spends her day, she replied that she gets up, eats the breakfast prepared by her daughter, takes her medicine, and reads a book

or does a crossword puzzle in bed.  (Id. at 30-31.)  Later in the day, she watches television.

(Id. at 31.)  During the day, she spends five hours in bed due to her lower back and leg pain.

(Id.)  With the pain medication she takes, her pain is a six on a ten-point scale.  (Id.)  After

she comes back home from a doctor's appointment, the pain is a nine.  (Id.)

> The VE was asked by the ALJ to assume
>
> a hypothetical claimant age 53 at the alleged date of onset, with a GED, some
> past work experience.  It's been opined that this hypothetical claimant can lift
> and carry 20 pounds occasionally, 10 pounds frequently; stand or walk for six
> hours out of eight; sit for six; can occasionally climb stairs and ramps; never
> ropes, ladders, and scaffolds; occasionally stoop, kneel, and crouch.  She
> should avoid concentrated exposure to extreme cold, hazards of unprotected
> heights and vibration. . . .  [C]ould this hypothetical claimant return to any
> past relevant work?

(Id. at 32-33.)  The VE replied that this claimant could return to the job of housekeeper as

it is described in *Dictionary of Occupational Titles* (DOT) and to the job of teacher's aide

in a day care.  (Id. at 33.)  If this claimant could only lift ten pounds occasionally and less

than ten pounds frequently, stand or walk for two hours out of eight, and sit for six,

Plaintiff's past relevant work would be eliminated.  (Id. at 33-34.)

The VE further testified that her testimony was consistent with the DOT and with

the *Selected Characteristics of Occupations*.  (Id. at 34.)

## Medical and Other Records Before the ALJ

The documentary record before the ALJ included forms Plaintiff completed as part

of the application process, documents generated pursuant to her application, and records

from various health care providers.

When applying for DIB, Plaintiff completed a Disability Report, listing her height as 5 feet 10 inches and her weight as 152 pounds.  (Id. at 175-82.)  She is unable to work because the pain caused by the ruptured discs in her back prevents her from standing or sitting for any length of time and, sometimes, from walking.  (Id. at 176.)  The discs first bothered her in 2000 and prevented her from working on May 1, 2007.  (Id.)  She was, however, still working.  (Id.)  The job she has held the longest is as a housekeeper at a hotel.  This job requires that she walk for a total of six hours each day; stand for two; stoop for four; kneel for two; crouch for two; handle, grab, or grasp big objects for six; reach for six; and write, type, or handle small objects for two.  (Id. at 177.)  The heaviest weight she had to lift was fifty pounds.  (Id.)  The heaviest weight she had to frequently lift was twenty-five pounds.  (Id. at 178.)  She was not taking any medication.  (Id. at 180.)

On a Work History Report, Plaintiff listed four jobs:  working in the laundry of a hotel from April 1976 to May 1986; as a teacher's aide in a day care from August 2002 to May 2003; as a cafeteria worker in a high school from August 2005 to May 2008; and as a housekeeper in a hotel in 2004.  (Id. at 142-49.)  As a teacher's aide, Plaintiff had to occasionally lift at most twenty pounds when lifting a child to change his or her diaper.  (Id. at 144.)  It is not clear how many hours each day she had to walk, stand, sit, or stoop.[4]  (Id.)  As a housekeeper, she had to occasionally or frequently lift less than ten pounds.  (Id. at

---

[4]It appears as though Plaintiff wrote "44" next to each exertional requirement.  Not only are there only twenty-four hours in a day, Plaintiff only worked for six hours a day.

146.) She had to sit a total of fifty minutes each day. (<u>Id.</u>) Again, it is not clear how many hours each day she had to walk, stand, stoop, or kneel. (<u>Id.</u>)

Asked to describe on a Function Report[5] what she did from the time she awoke until going to bed, Plaintiff reported that she got up; took a shower; dressed; had some coffee; went to her daughter's house; babysat her grandson, including feeding him breakfast, dressing him, and taking him to the bus stop; returned home and cooked dinner; returned to her daughter's house and met her grandson when he got off the bus; returned to her house and ate dinner; watched television; and went to bed. (<u>Id.</u> at 150-57.) She had no problem taking care of her personal needs. (<u>Id.</u> at 151.) She prepares meals which vary between sandwiches and multi-course dinners. (<u>Id.</u> at 152.) Although she cooks daily, the number of meals she cooks changes from day to day. (<u>Id.</u>) She cleans, does the laundry, washes the dishes, and puts the clothes away. (<u>Id.</u>) The cleaning takes three hours; the laundry two hours; putting clothes away thirty minutes; and washing dishes twenty minutes. (<u>Id.</u>) The yard work is done by a neighbor. (<u>Id.</u> at 153.) She goes outside six times a day and shops for groceries or clothes every two weeks. (<u>Id.</u>) Her hobbies include watching television and reading a book. (<u>Id.</u> at 154.) She cannot sit for long. (<u>Id.</u>) She used to enjoy walking, but can no longer walk very far. (<u>Id.</u>) She visits with friends once or twice a week. (<u>Id.</u>) Although she has no problems getting along with other people, she is not as active and does not socialize as much as she would like. (<u>Id.</u> at 155.) Her impairments affect her abilities

---

[5]The date listed on the Function Report is "1/04/08." (<u>Id.</u> at 157.) This is clearly an error. The DIB application was filed in November 2008; consequently, the Court will assume Plaintiff completed the report in 2009.

to lift, squat, bend, stand, reach, walk, sit, kneel, and climb stairs.  (Id.)  They do not affect

her abilities to talk, hear, see, remember, complete tasks, concentrate, understand, follow

instructions, use her hands, and get along with others.  (Id.)  She cannot lift anything heavier

than five pounds, cannot squat or bend much, cannot stand or sit for long, and cannot reach

without hurting.  (Id.)  She can walk no farther than five blocks before having to rest for ten

minutes.  (Id.)  She follows written and spoken instructions very well.  (Id.)  She also gets

along very well with authority figures.  (Id. at 156.)  She handles changes in routine well.

(Id.)

Plaintiff also completed a Missouri Supplemental Questionnaire.  (Id. at 158-60.)

She reported that she was currently working and had not received any treatment since filing

her application.  (Id. at 158.)  She uses a computer thirty to forty-five minutes a day.  (Id.

at 159.)  She is able to drive and has a valid driver's license.  (Id.)

Because she reported that she was currently working, Plaintiff was asked to complete

a Work Activity Report.  (Id. at 162-68.)  She disclosed that she had worked as a cafeteria

worker at a high school from August 2005 to May 2008.  (Id. at 163.)  She left that job to

help her daughter with day care for her grandchild.  (Id.)  She had started working in August

2008 as a housekeeper at a hotel.  (Id.)  She worked an average of fourteen hours a day.

(Id.)  She was still at this job.  (Id.)  She did not get any special help on either job.  (Id. at

164.)

Plaintiff completed a Disability Report – Appeal form after the initial denial of her

application.  (Id. at 193-98.)  There had been no change in her condition since she

completed the earlier report.  (Id. at 194.)  Since then, however, she had seen Dr. Paya Patel and was taking cyclobenzaprine and Tramadol.  (Id. at 195.)

In the twenty years between 1999 and 2008, inclusive, Plaintiff's annual earnings generally increased.  (Id. at 132.)  This trend stopped in 2002 when her earnings decreased from $17,032[6] in 2001 to $11,184 in 2002 and then to $6,242 in 2003.  (Id.)  She had no reportable earnings in 2004.  (Id.)  Her highest earnings in the remaining four years were $7,282 in 2006.  (Id.)  In her last year of reportable earnings, 2008, she earned $4,910.  (Id.)

Four years before her alleged disability onset date, in April 2003, Plaintiff consulted Corey G. Solman, Jr., M.D., at the Bone and Joint Institute, Inc., about her low back pain. (Id. at 230-31.)  Following a fall two months earlier at a restaurant, she had gone to the emergency room, been diagnosed by her family physician with degenerative disc changes and bulges, participated in physical therapy, taken Naprosyn and Relafen, and was doing better until two weeks earlier when the pain, which had been waxing and waning, became worse and occurred almost constantly.  (Id. at 230.)  The pain was particularly bad in certain positions.  (Id.)  Working in a day care, she tried to prevent the pain by squatting, not bending, to lift the children.  (Id.)  She smoked one pack of cigarettes a day.  (Id.)  She had occasional fatigue, some morning stiffness, occasional loss of energy, and numbness and tingling in her toes.  (Id.)  On examination, she had "some limited range of motion of the lumbar spine secondary to pain," but a full range of motion in her hips, knees, ankles, and toes.  (Id.)  She had 5/5 strength in her lower extremities with the exception of 4/5

_____

[6]All amounts have been rounded to the nearest dollar.

strength in her left hamstrings. (Id.) She had a negative left leg straight leg raise,[7] but had

pain with the right straight let raise. (Id.) Dr. Solman noted that the pain was in the right

lumbar spine sacroiliac joint area. (Id.) Plaintiff also had a positive Faber test, "pretty

significant on the right but negative on the left."[8] (Id.) X-rays of the lumbar spine showed

a loss of normal upper lumbar lordosis, degenerative spurring at multiple levels, and no

significant evidence of disc space narrowing. (Id. at 231.) X-rays of the pelvis area did not

reveal any significant abnormalities, including in the sacroiliac joints. (Id.) Dr. Solman's

diagnosis was degenerative joint disease of the lumbar spine and sacroiliac joint pain on the

right. (Id.) He prescribed a six-day dose pack of Medrol followed by Naprosyn and asked

her to return in two weeks for a reassessment. (Id.)

Almost three months later, Plaintiff returned. (Id. at 229.) She reported that she had

been doing better until a week earlier when, without cause, the low back pain had began

again. (Id.) She described the pain as constant, severe, sharp, and radiating to the sacroiliac

joints and buttocks. (Id.) She had 5/5 strength in her lower extremities with the remaining

exception of 4/5 strength in her left hamstring. (Id.) She had a negative Babinski sign[9] and

---

[7]"During a [straight leg raising] test a patient sits or lies on the examining table and the examiner attempts to elicit, or reproduce, physical findings to verify the patient's reports of back pain by raising the patient's legs when the knees are fully extended." **Willcox v. Liberty Life Assur. Co. of Boston**, 552 F.3d 693, 697 n.3 (8th Cir. 2009) (internal quotations omitted).

[8]A Faber test is used to screen for pathology of the hip joint or sacrum. See Laura Inverarity, D.O., Special Tests of the Lower Extremity, http://physicaltherapy.about.com/od/orthopedicsandpt (last visited July 16, 2012).

[9]A Babinski sign is positive if the big toe goes up when the sole of the foot is stimulated. MedicineNet.com, Definition of Babinski Sign, http://www.medterms.com/script/main (last visited

pain in her right sacroiliac joint on the straight leg raising test.  (Id.)  Her diagnosis was the same as before.  (Id.)  Dr. Solman prescribed Naprosyn and Skelaxin, each to be taken as needed, and Ultracet for pain.  (Id.)  She was to call if she did not significantly improve and, if she did, Dr. Solman would refer her to a physiatrist, a referral Plaintiff did not currently wish to pursue.  (Id.)

The next medical record before the ALJ was generated the same day as Plaintiff's amended alleged onset date, January 28, 2009, and is the report of an evaluation of Plaintiff by a consultant, Elbert Cason, M.D., pursuant to her DIB application.  (Id. at 207-13.)  She complained of low back pain – both dull and sharp – and reported that she had stopped working as a housekeeper the past Saturday because it caused stress on her back.  (Id. at 207.)  She had had the back pain for the past ten years.  (Id.)  The pain did not radiate.  (Id.)  She had been told then that she had two herniated discs.  (Id.)  She had decided against surgery.  (Id.)  She could walk four blocks, stand for thirty minutes, and sit for that long, but she could not lift anything heavier than five pounds.  (Id.)  She did not use an assistive device when walking.  (Id.)  She was not currently under a doctor's care because she had no health insurance.  (Id.)  She lived with her sister.  (Id.)  She drove a car, did some household chores, shopped occasionally for groceries, left the house daily, and occasionally took a nap.  (Id.)  She took Lisinopril for hypertension, which she had had for twelve years.  (Id. at 207-08.)  After taking her blood pressure and seeing that it was high, Dr. Cason

July 16, 2012).  A positive sign indicates a problem in the central nervous system.  Id.

recommended that she see her doctor for better compliance. (Id. at 208.) She smoked one and one-half packs of cigarettes a day; she did not drink alcohol or use illegal drugs. (Id.)

On examination, she was in no acute distress when sitting on the examination table. (Id.) She had a decreased range of motion in her back with paravertebral lumbar area tenderness. (Id.) There were no muscle spasms. (Id.) Straight leg raises were negative. (Id.) There was no swelling in her extremities. (Id.) She could heel and toe stand if she held on the edge of a desk. (Id. at 208-09.) She could partially squat, although it hurt her lower back to do so. (Id. at 209.) Her gait without an assistive device was normal. (Id.) Her range of motion in her back was sixty degrees on flexion and extension and ten degrees on lateral flexion to the left and to the right. (Id. at 209, 213,) The range of motion in her cervical spine, ankles, shoulders, elbows, and wrists was normal. (Id. at 209, 212-13.) The range of motion in her knees was decreased.[10] (Id. at 209. ) Her grip strength was normal in each hand, and she was able to use her fingers for buttoning, writing, and manipulating small tools or parts. (Id. at 209, 212.) Also, she was alert and oriented to time, place, and person. (Id. at 209.) X-rays of her lumbar spine revealed "advanced degenerative and hypertrophic changes throughout lumbar spine with irregular narrowing and sclerosis of intervertebral disc spaces, particularly L-2/3; moderate scoliosis." (Id. at 210.) Dr. Cason's diagnosis was degenerative arthritis in the lumbar spine and poorly-regulated hypertension. (Id. at 209.)

---

[10]This statement in the narrative portion of Dr. Cason's report conflicts with his notation on the Range of Motion Values indicating a full range of motion in Plaintiff's knees. See id. at 212.

The following month, a Physical Residual Functional Capacity Assessment (PRFCA) of Plaintiff was completed by Abby Mobley, an agency nonmedical, nonexaming consultant. (Id. at 214-20.) The primary diagnosis was advanced lumbar degenerative disc disease/degenerative joint disease; the secondary diagnosis was moderate scoliosis; another alleged impairment was uncontrolled hypertension. (Id. at 214.) These impairments resulted in exertional limitations of Plaintiff being able to occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; and stand, sit, or walk about six hours in an eight-hour day. (Id. at 215.) She had postural limitations of only occasionally balancing, stooping, kneeling, crouching, crawling, and climbing ramps, stairs, ladders, ropes or scaffolds. (Id. at 217.) She had no manipulative, visual, communicative, or environmental limitations. (Id. at 217-18.)

Plaintiff sought medical treatment on March 24 at the People's Health Centers for her low back pain and a check of her blood pressure. (Id. at 225-27, 240-42.) On a ten-point scale, her pain was an eight. (Id. at 227.) She had not taken any blood pressure medication for three months. (Id. at 240.) She was prescribed Lisinopril for her hypertension and Flexeril and Tramadol for her back pain. (Id.) When Plaintiff returned one week later for a recheck of her blood pressure, it was still above the target range. (Id. at 223-34, 238-39.) Her Lisinopril dosage was increased; Plaintiff was to diet and exercise. (Id. at 239.)

The following month, on April 27, Plaintiff returned to People's Health Centers, complaining of dizziness for the past two weeks. (Id. at 236-37.) She was prescribed a

medication for the dizziness and continued on her other medications.  (Id. at 237.)  She was to return in one week.  (Id.)

It was on December 30 that Plaintiff returned to People's Health Centers.  (Id. at 233-35.)  Plaintiff reported to Mohammed Ashraf, M.D., that her back pain had begun ten years earlier, radiated to both thighs, was sharp, and was aggravated by bending, lifting, twisting, and walking.  (Id. at 233.)  She had been out of her medication for "sometime."  (Id.)  On a ten-point scale, her pain was a five.  (Id. at 234.)  She was advised to take her medication as given, exercise, and follow a low salt diet.  (Id.)  She was also advised to stop smoking and told that the more she moved, the faster she would get better.  (Id. at 235.)

## The ALJ's Decision

Analyzing Plaintiff's application under the Commissioner's five-step evaluation process, the ALJ first found that Plaintiff last met the insured status requirements of the Act on September 30, 2011, and had not engaged in substantial gainful activity since her amended alleged disability onset date of January 28, 2009.  (Id. at 11-12.)  The ALJ next found that Plaintiff had severe impairments of lumbar spine degenerative disc disease and degenerative joint disease.  (Id. at 12.)  Although she also had a history of hypertension, she was noncompliant with her medication, stopping and running out of it, and with her treatment.  (Id.)  Even so, the medical records of March 2009 and December 2009, include references to Plaintiff not having any chest pain, shortness of breath, dizziness, or headaches.  (Id.)  Plaintiff had also testified that her blood pressure was controlled by medication, when she took it.  (Id. at 12-13.)  Plaintiff's two severe impairments did not

meet or medically equal an impairment of listing-level severity. (Id. at 13.) The ALJ concluded that Plaintiff had the residual functional capacity (RFC) to perform light work[11] with the exceptions of not being able to climb ladders, ropes, or scaffolds and of being limited to no more than occasional stooping, kneeling, crouching, or climbing stairs and ramps. (Id.) Also, she had to avoid concentrated exposure to vibrations, unprotected heights, and extreme cold. (Id.)

In reaching this finding, the ALJ assessed Plaintiff's credibility under the criteria of 20 C.F.R. § 404.1529; Polaski v. Heckler, 719 F.2d 1320 (8th Cir. 1984); and Social Security Rulings 96-4p and 96-7p, and found it to be lacking insofar as her statements were inconsistent with his RFC conclusions. Specifically, the ALJ noted that Plaintiff had testified that a magnetic resonance imaging (MRI) done ten years earlier showed two herniated discs in her lumbar spine, but failed to submit the MRI; Plaintiff testified that surgery had been recommended, but failed to submit a supporting record; the records that were submitted did not reflect any significant degree of muscle atrophy, sensory or motor loss, reflex abnormality, or gait disturbance; April 2003 x-rays showed no significant disc space narrowing; January 2009 x-rays showed advanced degenerative disc and hypertrophic changes throughout her lumbar spine with irregular narrowing and sclerosis of intervertebral disc spaces, but did not suggest any significant progression of her degenerative disc disease

---

[11]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing . . . ." 20 C.F.R. § 404.1567(b).

or degenerative joint disease.  (Id. at 14.)  Also detracting from Plaintiff's credibility was the paucity of treatment, e.g., she was told in June 2003 to follow-up as needed but did not consult a health care provider again until March 2009 and, according to her testimony, she declined a recommendation to have surgery.  (Id.)  And, the treatment Plaintiff did receive was limited, e.g., she had not been prescribed any pain modalities, back brace, or an assistive device for ambulation.  (Id.)  The ALJ noted that Plaintiff had brought a cane to the hearing and testified she had used it for the past year; however, there was no indication that a physician had recommended or prescribed a cane and she had not brought the cane to the consultative examination or then needed it.  (Id. at 15.)  She had not required aggressive medical treatment or needed hospitalization or surgical intervention.  (Id.)

With her RFC, Plaintiff could return to her past relevant work as a teacher's aide and motel housekeeper as these jobs are generally performed.  (Id.)

For the foregoing reasons, the ALJ concluded, Plaintiff was not disabled within the meaning of the Act.  (Id. at 16.)

### Legal Standards

Under the Act, the Commissioner shall find a person disabled if the claimant is "unable to engage in any substantial activity by reason of any medically determinable physical or mental impairment," which must last for a continuous period of at least twelve months or be expected to result in death.  42 U.S.C. § 1382c(a)(3)(A).  The impairment suffered must be "of such severity that [the claimant] is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step process for determining whether a person is disabled.  See 20 C.F.R. § 404.1520; **Moore v. Astrue**, 572 F.3d 520, 523 (8th Cir. 2009); **Ramirez v. Barnhart**, 292 F.3d 576, 580 (8th Cir. 2002); **Pearsall v. Massanari**, 274 F.3d 1211, 1217 (8th Cir. 2002).  "Each step in the disability determination entails a separate analysis and legal standard."  **Lacroix v. Barnhart**, 465 F.3d 881, 888 n.3 (8th Cir. 2006).  First, the claimant cannot be presently engaged in "substantial gainful activity."  See 20 C.F.R. § 404.1520(b).  Second, the claimant must have a severe impairment.  See 20 C.F.R. § 404.1520(c).  The Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities . . . ."  Id.

At the third step in the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment which meets or equals one of the impairments listed in the regulations and whether such impairment meets the twelve-month durational requirement.  See 20 C.F.R. § 404.1520(d) and Part 404, Subpart P, Appendix 1.  If the claimant meets these requirements, she is presumed to be disabled and is entitled to benefits.  **Warren v. Shalala**, 29 F.3d 1287, 1290 (8th Cir. 1994).

"Prior to step four, the ALJ must assess the claimant's [RFC], which is the most a claimant can do despite her limitations."  **Moore**, 572 F.3d at 523 (citing 20 C.F.R. § 404.1545(a)(1)).  "[RFC] is not the ability merely to lift weights occasionally in a doctor's

office; it is the ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." **Ingram v. Chater**, 107 F.3d 598, 604 (8th Cir. 1997) (internal quotations omitted). "'[A] claimant's RFC [is] based on all relevant evidence, including the medical records, observations by treating physicians and others, and an individual's own description of [her] limitations.'" **Moore**, 572 F.3d at 523 (quoting <u>Lacroix</u>, 465 F.3d at 887). "The need for medical evidence, however, does not require the [Commissioner] to produce additional evidence not already within the record. '[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.'" **Howard v. Massanari**, 255 F.3d 577, 581 (8th Cir. 2001) (quoting <u>Frankl v. Shalala</u>, 47 F.3d 935, 937-38 (8th Cir. 1995)) (second alteration in original).

In determining a claimant's RFC, the ALJ must evaluate the claimant's credibility. **Wagner v. Astrue**, 499 F.3d 842, 851 (8th Cir. 2007); **Pearsall**, 274 F.3d at 1217. This evaluation requires that the ALJ consider "'(1) the claimant's daily activities; (2) the duration, intensity, and frequency of the pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints.'" **Buckner v. Astrue**, 646 F.3d 549, 558 (8th Cir. 2011) (quoting <u>Moore</u>, 572 F.3d at 524). "Although 'an ALJ may not discount a claimant's allegations of disabling pain solely because the objective medical evidence does not fully support them,'

the ALJ may find that these allegations are not credible 'if there are inconsistencies in the evidence as a whole.'" **Id.** (quoting Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005)). After considering the seven factors, the ALJ must make express credibility determinations and set forth the inconsistencies in the record which caused the ALJ to reject the claimant's complaints. **Singh v. Apfel**, 222 F.3d 448, 452 (8th Cir. 2000); **Beckley v. Apfel**, 152 F.3d 1056, 1059 (8th Cir. 1998).

At step four, the ALJ determines whether claimant can return to her past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e). At step four, the ALJ determines whether claimant can return to her past relevant work, "review[ing] [the claimant's] [RFC] and the physical and mental demands of the work [claimant has] done in the past." 20 C.F.R. § 404.1520(e). Additionally, "[a]n ALJ may find the claimant able to perform past relevant work if the claimant retains the ability to perform the functional requirements of the job as she actually performed it or as generally required by employers in the national economy." **Samons v. Astrue**, 497 F.3d 813, 821 (8th Cir. 2007). The burden at step four remains with the claimant. **Moore**, 572 F.3d at 523; accord **Dukes v. Barnhart**, 436 F.3d 923, 928 (8th Cir. 2006); **Vandenboom v. Barnhart**, 421 F.3d 745, 750 (8th Cir. 2005).

If the ALJ holds at step four of the process that a claimant cannot return to past relevant work, the burden shifts at step five to the Commissioner to establish that the claimant maintains the RFC to perform a significant number of jobs within the national

economy.  **Banks v. Massanari**, 258 F.3d 820, 824 (8th Cir. 2001).  See also 20 C.F.R.

§ 404.1520(f).  The Commissioner may meet his burden by eliciting testimony by a VE,

**Pearsall**, 274 F.3d at 1219, or by applying the medical-vocational guidelines, **Phillips v.**

**Astrue**, 671 F.3d 699, 702 (8th Cir. 2012).

If the claimant is prevented by her impairment from doing any other work, the ALJ

is to find the claimant to be disabled.

The ALJ's decision whether a person is disabled under the standards set forth above

is conclusive upon this Court "'if it is supported by substantial evidence on the record as a

whole.'"  **Wiese v. Astrue**, 552 F.3d 728, 730 (8th Cir. 2009) (quoting Finch v. Astrue, 547

F.3d 933, 935 (8th Cir. 2008)); accord **Dunahoo v. Apfel**, 241 F.3d 1033, 1037 (8th Cir.

2001).  "'Substantial evidence is relevant evidence that a reasonable mind would accept as

adequate to support the Commissioner's conclusion.'"  **Perkins v. Astrue**, 648 F.3d 892, 897

(8th Cir. 2011) (quoting Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009)).  When

reviewing the record to determine whether the adverse decision is supported by substantial

evidence, however, the Court "'must consider evidence that both supports and detracts from

the ALJ's decision, but [may not] reverse an administration decision simply because some

evidence may support the opposite conclusion.'"  **Id.** (quoting Medhaug, 578 F.3d at 813).

"'If, after reviewing the record, the [C]ourt finds it is possible to draw to inconsistent

positions from the evidence and one of those positions represents the ALJ's findings, the

[C]ourt must affirm the ALJ's decision.'"  **Id.** (quoting Medhaug, 578 F.3d at 897).  See also

**Owen v. Astrue**, 551 F.3d 792, 798 (8th Cir. 2008) (the ALJ's denial of benefits is not to be

reversed "so long as the ALJ's decision falls within the available zone of choice") (internal quotations omitted).

## Discussion

Plaintiff argues that the ALJ erred when assessing her RFC and when posing a hypothetical question to the VE.

"The RFC 'is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities,' despite his or her physical or mental limitations." **Roberson v. Astrue**, 481 F.3d 1020, 1023 (8th Cir. 2007) (quoting SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996)); accord **Masterson v. Barnhart**, 363 F.3d 731, 737 (8th Cir. 2004); **Depover v. Barnhart**, 349 F.3d 563, 567 (8th Cir. 2003). "When determining a claimant's RFC, the ALJ must consider all relevant evidence, including the claimant's own description of her or his limitations, as well as medical records, and observations of treating physicians and others." **Roberson**, 481 F.3d at 1023. See also SSR 96-8p, 1996 WL 374184 at *5 (listing factors to be considered when assessing a claimant's RFC, including, among other things, medical history, medical signs and laboratory findings, effects of treatment, medical source statements, recorded observations, and "effects of symptoms . . . that are reasonably attributed to a medically determinable impairment").

An ALJ does not, however, fail in his duty to assess a claimant's RFC on a function-by-function basis merely because the ALJ does not address all areas regardless of whether a limitation is found. See **Depover**, 349 F.3d at 567. Instead, an ALJ who specifically addresses the areas in which he found a limitation but is silent as to those areas in which no

limitation is found is believed to have implicitly found no limitation in the latter. **Id.** at 567-68. See also **Craig v. Apfel**, 212 F.3d 433, 436 (8th Cir. 2000) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").

Plaintiff argues that the ALJ's finding she could perform light work erroneously fails to account for her limited abilities to stand, walk, and lift. As noted by Plaintiff, "'[l]ight work' requires that a claimant be capable of standing or walking for total of six hours out of an eight-hour work day." **Frankl**, 47 F.3d at 937. See also Social Security Ruling 83-10, 1983 WL 31251, *6 (S.S.A. 1983). This walking and standing requirement is "the primary difference between sedentary and most light jobs." **Id.** at *5.

Aside from Plaintiff's description of these limited abilities – a description which, as discussed below, the ALJ found not to be credible – there is no evidence to support a degree of limitation that would preclude light work. Plaintiff cites the reference in Dr. Cason's notes to her being able to only walk four blocks, sit for thirty minutes, and stand for thirty minutes. (See Pl.'s Br. at 9, ECF No. 18.) These restrictions are not Dr. Cason's, however, they are what Plaintiff reported to him. Dr. Cason's found her gait to be normal, noting that she did not use an assistive device, her straight leg raises to be negative, and her extremities not to

be swollen.  Plaintiff had a decreased range of motion in her back,[12] but there is nothing in the record to suggest that the decrease precluded her from light work.[13]

Plaintiff also cites her use of a cane as indicative of her limited abilities.  Although she testified at the hearing that she uses a cane and had done so for the past year, there is no reference in the medical records to a cane, including no recommendation that she use one.  Conversely, Dr. Cason specifically noted that Plaintiff did not use, or need, a cane.  Additionally, when Plaintiff did seek medical treatment, she was encouraged to exercise and told that the more she moved, the faster she would improve.  See **Kriebaum v. Astrue**, 280 Fed.Appx. 555, 557 (8th Cir. 2008) (affirming ALJ's decision that claimant could perform light work when, inter alia, use of cane was self-prescribed); **Raney v. Barnhart**, 396 F.3d 1007, 1011 (8th Cir. 2005) (affirming ALJ's decision that claimant could perform light work when, inter alia, use of cane was self-prescribed and was sporadic); **Thunburg v. Apfel**, 2000 WL 1060466, *1 (8th Cir. Aug. 3, 2000) (unpublished per curiam) (rejecting argument

---

[12]Plaintiff also takes issue with the ALJ's finding that the x-rays showed there had been no significant progression of her degenerative disc disease between 2003 and 2009.  Even if this characterization is erroneous, it had no affect on the outcome and, therefore, does not require a remand.  See **Buckner**, 646 F.3d at 560.  The question before the ALJ was whether Plaintiff's degenerative disc disease precluded her from working, not whether it had or had not progressed.

[13]Because the ALJ did not err in finding Plaintiff could perform light work, the question whether she would be disabled under Rule 201.14 of the Medical Vocational Guidelines, providing that a claimant of her age and education capable only of sedentary work be found disabled, need not be reached.  Were it to be reached, however, the Court notes that the ALJ found at step four that Plaintiff could return to her past relevant work as the work is generally performed in the national economy, that she retains the burden of proof at step four, and that the Guidelines come into play at step five.

that ALJ erred by finding claimant could perform light work although she walked with a cane; claimant also reported that she walked one to two miles a day on doctor's advice).

It is undisputed that Plaintiff would be disabled if her subjective complaints were credible.

"'If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, [the Court] will normally defer to the ALJ's credibility determination.'" **Renstrom v. Astrue**, 680 F.3d 1057, 1065 (8th Cir. 2012) (quoting <u>Juszcyzk v. Astrue</u>, 542 F.3d 626, 632 (8th Cir. 2008)). Although "'[a]n ALJ may not discount a claimant's subjective complaints solely because the objective medical evidence does not fully support them," **id.** (quoting <u>Wiese</u>, 552 F.3d at 733), the absence of objective medical evidence to support a claimant's complaints is a proper consideration when assessing that claimant's credibility, **Renstrom**, 680 F.3d at 1065; **Mouser v. Astrue**, 545 F.3d 634, 638 (8th Cir. 2008).

Plaintiff argues that the ALJ erred by considering the paucity of treatment because it was due to her lack of health insurance. A lack of sufficient financial resources to pursue treatment for a disabling impairment may be "justifiable cause" for such noncompliance. **Brown v. Barnhart**, 390 F.3d 535, 540 (8th Cir. 2004). Before a lack of funds may excuse a failure to pursue treatment or obtain medication, however, there must be evidence that the claimant was denied medical treatment due to financial reasons. **Goff**, 421 F.3d at 793. <u>See also</u> **Murphy v. Sullivan**, 953 F.2d 383, 386-87 (8th Cir. 1992) (rejecting claim of financial hardship in case in which there was no evidence that claimant had attempted to obtain low cost medical treatment or had been denied care because of inability to pay). Such evidence

is lacking in the instant case. Plaintiff sought medical treatment in 2003, when her earnings were declining, and not again until March 2009 – four months after she filed her DIB application. In the interim, she had settled a worker's compensation claim. There is no evidence that the provider of this treatment, People's Health Centers, would have turned her away for financial reasons if she had not sought treatment earlier. And, the record shows that Plaintiff smoked cigarettes, the amount of which varied between one and one-half pack of cigarettes a day in January 2009 and one pack of cigarettes every day and one half, in February 2010. In **Riggins v. Apfel**, 177 F.3d 689, 693 (8th Cir. 1999), the Eighth Circuit Court of Appeals rejected lack of funds as an excuse for the absence of medical treatment or prescription medicine, finding that there was no evidence to suggest that the claimant had "sought any treatment offered to indigents or chose to forego smoking three packs of cigarettes a day to help finance pain medication."

## Conclusion

Considering all the evidence in the record, including that which detracts from the ALJ's conclusions, the Court finds that there is substantial evidence to support the ALJ's decision. "If substantial evidence supports the ALJ's decision, [the Court] [should] not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because [the Court] would have decided differently." **Wildman v. Astrue**, 596 F.3d 959, 964 (8th Cir. 2010). Accordingly,

**IT IS HEREBY RECOMMENDED** that the decision of the Commissioner be AFFIRMED and that this case be DISMISSED.

The parties are advised that they have **fourteen days** in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in waiver of the right to appeal questions of fact.

/s/ Thomas C. Mummert, III
THOMAS C. MUMMERT, III
UNITED STATES MAGISTRATE JUDGE

Dated this  2nd  day of August, 2012.